Harry W. SCHUSTER, III, et al., Plaintiffs,

v.

PLAZA PACIFIC EQUITIES, INC., d/b/a Ashley Walker Joint Venture, a/k/a Ashley Oaks Apartments, Defendant.

Civ. A. No. C83–1844A.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 26, 1984.

Gerald B. Kline, Henry R. Bauer, Jr., Bauer, Deitch & Raines, P.C., Atlanta, Ga., for plaintiffs.

Meade Burns, Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This action is before the court on plaintiffs' motion for partial summary judgment and defendant's motion for summary judgment. Plaintiffs' complaint was filed in the State Court of DeKalb County on August 15, 1983. The complaint states that petitioners Harry W. Schuster, III, Gloria J. Schuster, and their children were tenants of apartment number 2370C in defendant's apartment complex in DeKalb County, Georgia. Petitioner Michele Golgan-Hand and her minor child, Katherine Michele Hand, were tenants of apartment number 2370D. The complaint alleges that on or about April 10, 1983 a fire started in the furnace located in apartment 2370A and that the fire spread to petitioners' apartments causing extensive damage. Plaintiffs allege that the fire was caused by the negligence of defendant in that "the furnace in apartment 2370A was in ill repair, had been previously malfunctioning, and was made up of a patchwork of parts, and, generally, could not be expected to operate properly." Petitioners allege that defendant knew that the furnace in apartment 2370A was in a hazardous condition and that to permit a tenant to occupy apartment 2370 and operate the furnace would create a fire hazard. Plaintiffs seek compensatory damages for loss of their personal property, vindictive damages under O.C.G.A. § 51–12–6, exemplary damages in the amount of $300,000 pursuant to O.C.G.A.

§ 51–12–5, and expenses of litigation including reasonable attorney's fees pursuant to O.C.G.A. § 13–6–11. Plaintiffs' complaint was removed to this court by defendant on August 31, 1983.

Both of the motions for summary judgment before the court at this time concern the interpretation and enforceability of paragraphs 15 and 17 of the lease agreement between defendant and plaintiffs. Paragraph 15 states that:

Management shall not be liable for damage to resident's property of any type for any reason or cause whatsoever, except where such is due to management's negligence. *Residents shall be responsible for obtaining fire, extended coverage and liability insurance with respect to apartment and contents.* (Emphasis added).

Paragraph 17 of the lease agreement, entitled "Indemnification," provides in pertinent part as follows:

Resident releases management from liability for and agrees to indemnify management against all losses incurred by management as a result of (a) resident's failure to fulfill any condition of this agreement ....

Plaintiffs' motion for partial summary judgment asks this court to rule as a matter of law that paragraph 15 does not bar plaintiffs' recovery in this action. Defendant's motion for summary judgment asks this court to do the opposite and rule that paragraph 15, taken together with paragraph 17, is a complete bar to plaintiffs' recovery and entitles defendant to summary judgment as a matter of law. Both motions shall be considered together.

■ Under Georgia law a landlord has a statutory duty to keep the premises in repair. O.C.G.A. § 44–7–13. Further, "the landlord is responsible for damages arising from defective construction or *for damages arising from the failure to keep the premises in repair.*" O.C.G.A. § 44–7–14 (emphasis added). This duty to keep the premises in repair and legal liability for failure to discharge that duty is imposed by statute and cannot be in any way avoided or

modified by the landlord or the tenant. O.C.G.A. § 44–7–2(b) provides that:

> In any contract, lease, license agreement, or similar agreement, oral or written, for the use or rental of real property as a dwelling place, a landlord or a tenant may not waive, assign, transfer, or otherwise avoid any of the rights, duties, or remedies contained in the following provisions of law:
>
> (1) Code Section 44–7–13, relating to the duties of a landlord as to repairs and improvements;
>
> (2) Code Section 44–7–14, relating to the liability of a landlord for failure to repair;

> .   .   .   .   .

Thus, the Georgia legislature has established in clear terms that a landlord may not in any way exculpate himself from liability for his failure to maintain the premises in good repair. Contractual provisions in a lease agreement which attempt to do this are void as against the public policy of the State of Georgia as expressed by the legislature and by the Georgia courts. *See Country Club Apartments vs. Scott*, 246 Ga. 443, 444, 271 S.E.2d 841 (1980).

Defendant argues that "the provisions of the leases at issue here do not seek to exculpate the defendant as to its actions." Rather, defendant argues that paragraph 15 of the lease imposes a clearly stated condition or term of the lease, i.e., that the tenants "shall be responsible for obtaining fire, extended coverage and liability insurance with respect to apartment and contents." Defendant then argues that "the indemnification provisions contained in paragraph 17 of the lease then re-enforce (sic) that the landlord will be released from liability and indemnified for a tenant's failure to abide by such a condition." Thus, defendant states that "this case involves indemnity as to the tenant's failure to obtain insurance pursuant to contractual obligation rather than an attempt to obtain indemnity for its own negligence." However, while the court is impressed by the ingenuity of defendant's argument, it is unpersuaded as to its soundness.

Defendant relies upon two recent Georgia cases. *George R. Lane and Associates vs. Thomasson*, 156 Ga.App. 313, 274 S.E.2d 708 (1980) was a wrongful death action brought by the mother of a deceased minor child who drowned in a swimming pool of the apartment complex owned and managed by the appellants. The case involved the comparative negligence of the child's father, for allowing the child to wander into the pool area unsupervised, and the apartment complex, for failure to repair a lock on the gate to the pool area. The child's presence in the pool area before the pool's hours of operation and without the supervision of his father was a clear violation of the apartment's rules and regulations which were conspicuously posted and which were incorporated into the lease agreement. The lease agreement also contained an indemnification provision similar to that in the present case. The court of appeals held that under the terms of the indemnification clause, the child's presence in the pool area in violation of the rules and regulations of the apartment complex barred recovery against the complex.

Defendant argues that *Thomasson* is controlling in this case. However, the court in *Thomasson* was careful to point out that the case did not involve a landlord's implied warranty of good repair since that issue was not presented in the pretrial order. 156 Ga.App. at 315, 274 S.E.2d 708. Also, the court emphasized that

> Release clauses are ineffective to protect the landlord where his acts have been willful and wanton (*Camp vs. Roswell Wieuca Court Apartments*, 127 Ga.App. 67(1), 192 S.E.2d 499); nor can the implied warranty that the premises are in good repair at the time they are rented be defeated by an exculpatory provision where the injury is caused by the sole negligence of the lessor. *Country Club Apartments vs. Scott*, 246 Ga. 443, 271 S.E.2d 841 (1980). *George R. Lane and Associates vs. Thomasson*, 156 Ga.App. 313, 314–15 [274 S.E.2d 708] (1980).

*Thomasson* is distinguishable from the present case on several grounds. First, *Thomasson* involved issues of the plaintiffs' negligence in failing to supervise their child. Defendant in the present case does not claim that plaintiffs were in any way negligent. The court stated "[a]lthough the language in the agreement is not sufficiently explicit to indemnify the [appellants] against liability resulting strictly from its [management's] own [sole] negligence, it is sufficient to require indemnification for damages resulting from a combination of its negligence and [Mr. Thomasson's] negligence." 156 Ga.App. at 315, 274 S.E.2d 708 (quoting *Georgia State Telephone Company vs. Scarboro*, 148 Ga. App. 390, 391, 251 S.E.2d 309 (1978)). The present case also is distinguishable from *Thomasson* because it contains allegations that defendant's failure to repair the furnace was willful and wanton. As the *Thomasson* court pointed out, release clauses are ineffective to protect a landlord where his acts have been willful or wanton or where the injury is caused by the landlord's sole negligence. Thus, *Thomasson* is not controlling in this case.

■ The other case relied upon by defendant is *Tuxedo Plumbing and Heating Company vs. Lie-Nielson*, 245 Ga. 27, 262 S.E.2d 794 (1980). This case involved the meaning and enforceability of clauses in a contract between the owner of apartments and the contractor employed to do plumbing work that resulted in a fire loss to the apartments. The case did not involve the duties of a landlord to his tenant and therefore is not directly applicable in the present case. However, the *Tuxedo Plumbing* decision is helpful because it construes language similar to that in paragraph 15 of the present lease. The contract between the owner of the apartment complex and the contractor provided in relevant part that "owner shall be responsible for procuring and maintaining fire insurance with extended coverage upon the structures and improvements of the Property in such amount(s) as determined solely by Owner." The contractor contended that "the well-recognized meaning of such a 'waiver of subrogation clause' is that the owner and contractor waived their claims against each other regarding fire loss resulting from the work and agreed to look solely to the insurance to be procured and maintained in behalf of the owner and contractor by the owner at the owner's expense." The court agreed with the contractor that the owner's insurance company, having paid the owner for his fire losses, was not entitled to sue the contractor for recovery of the sums paid. The court went on to state:

> The rule applicable to such a contract has been stated as follows: "It has been recognized by numerous authorities that where parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party." 245 Ga. at 28 (quoting *General Cigar Co. vs. Lancaster Leaf Tobacco Co.*, 323 F.Supp. 931, 941 (D.Md.1971)).

If the court in the present case were to give to paragraph 15 of the lease agreement the construction given by the court in *Tuxedo Plumbing*, it would allow defendant to have completely exculpated itself from all liability for its own negligence. If the plaintiffs had purchased insurance as defendant argues that the contract required them to do, defendant would be immune from a subrogation suit by plaintiffs' insurers under *Tuxedo Plumbing*. Since plaintiffs did not have insurance, defendant would have plaintiffs barred under the indemnification clause. While such a result may be acceptable in a transaction between an apartment complex and a contractor, this court cannot escape the conclusion that such a provision violates O.C.G.A. § 44–7–2. A contractual provision which requires a tenant to insure himself against the landlord's sole negligence and which completely immunizes the landlord from liability for his own negligence would seem clearly to "waive, assign, transfer, or oth-

erwise avoid ... the rights, duties, or remedies contained in" O.C.G.A. § 44–7–13 and § 44–7–14. This neither the landlord nor the tenant may do. The legislature has declared such contractual provisions void as against public policy.

The court hereby holds that paragraph 15 of the lease agreement is void insofar as it imposes upon tenant a condition that he purchase insurance to protect himself against the landlord's negligence. Further, the court holds that paragraph 17 of the lease agreement is void insofar as it purports to bar plaintiffs' recovery in this case because of plaintiffs' failure to purchase such insurance. Therefore, plaintiffs' motion for partial summary judgment is GRANTED. Defendant's motion for summary judgment is DENIED.